E-FILED
Monday, 24 February, 2020 11:02:18 AM
Clerk, U.S. District Court, ILCD
FILED

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois

FEB 1 0 2020

**CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS**

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

LG cellular phone located in FBI evidence storage as no. E03347715 and an Apple iPhone, model number A1688 FBI located in FBI storage as no. E03347716

Case No. 20-MJ- 7019

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ Central _____ District of _____ Illinois _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 846 | Conspiracy to possess with intent to distribute controlled substances; |
| 18 U.S.C. 1071 | Concealing a person from arrest; |
| | See other violations as explained in the attached affidavit. |

The application is based on these facts:

See the attached affidavit of FBI Task Force Officer Chad Ramey, which is incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/Chad Ramey

*Applicant's signature*

FBI TFO Chad Ramey

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ Telephone _____ *(specify reliable electronic means)*

s/Eric Long

Date: 2/10/2020

*Judge's signature*

City and state: Urbana, IL

HON. ERIC I. LONG, U.S. MAGISTRATE JUDGE

*Printed name and title*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

IN THE MATTER OF THE SEARCH OF
**LG cellular telephone currently located**
**in FBI evidence storage under evidence**
**number E03347715 and an Apple iPhone,**           Case No. 20-MJ-_____
**model number A1688 FBI currently**
**located in FBI evidence storage under**
**evidence number E03347716.**

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41
## FOR A WARRANT BY TELEPHONE TO SEARCH AND SEIZE

I, **Chad Ramey,** being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the

Federal Rules of Criminal Procedure for a search warrant authorizing the examination

of property — two electronic devices — which are currently in law enforcement

possession, and the extraction from that property of electronically stored information

described in Attachment B.

2.      I am a police officer with the Decatur Police Department, Decatur, Illinois

(DPD) and have been so for the past twenty-four (24) years. For the past twenty (20)

years, I have been assigned to the DPD Street Crimes Unit. I am also assigned as a

Special Federal Officer with the Federal Bureau of Investigation working with the

Eastern Illinois Violent Criminal Enterprise and Drug Trafficking Organization Task

Force. I have received training in and investigate complex criminal enterprises,

including Drug Trafficking Organizations (DTO). I have participated in narcotics

investigations involving the manufacture, transportation, and distribution of controlled substances. These investigations have resulted in the seizure of controlled substances and proceeds from the sale of controlled substances, as well as arrests and convictions of individuals engaged in the illegal distribution of controlled substances. I am familiar with, and have utilized, normal methods of investigation, including, but not limited to physical and electronic surveillance, questioning of witnesses, the use of search and arrest warrants, the use of informants, the use of pen registers, the use of phone location information, and the analysis of telephone records.

3.    This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

4.    The property to be searched are two cellular phones found on COURTNEY TYLER JOHNSON's person at the time of his arrest on December 23, 2019. The two devices are further described as follows:

  a. **Device 1** is an **LG cellular telephone,** hereinafter the "Device 1." The Device is currently located in **FBI evidence storage under evidence number E03347715**.

  b. **Device 2** is an **Apple iPhone, model number A1688**, hereinafter the "Device 2." The Device is currently located in **FBI evidence storage under evidence number E03347716.**

2

5.  The applied-for warrant would authorize the forensic examination of **Device 1** and **Device 2** for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE & INCORPORATION OF PRIOR AFFIDAVITS

6.  On July 3, 2019, the United States District Court for the Central District of Illinois issued a complaint and arrest warrant for COURTNEY TYLER JOHNSON in case number 19-MJ-7133, supported by the sworn affidavit of FBI Special Agent Mark Hill. The affidavit in support of that complaint are incorporated herein and attached hereto as "ADDENDUM A."

7.  On July 11, 2019, several search warrants were executed in the Decatur, Springfield, Collinsville (Illinois) and St. Louis (Missouri) areas. The search warrant in St. Louis was an apartment known to be COURTNEY TYLER JOHNSON's primary residence. COURTNEY TYLER JOHNSON was not located but his girlfriend (I.B.) and son (C.J.) were present. Jennifer Fisher (Target Subject's mother), Gabrielle Johnson (COURTNEY TYLER JOHNSON's sister), and Timothy Ealey (COURTNEY TYLER JOHNSON's associate and co-conspirator) were arrested pursuant to federal arrest warrants for the conspiracy to distribute controlled substances.

8.  On July 17, 2019 and August 6, 2019, law enforcement interviewed COURTNEY TYLER JOHNSON's grandmother (K.K.). K.K. advised that after the July 2019 interview, she spoke telephonically with Target Subject. K.K. told COURTNEY TYLER JOHNSON that she had been interviewed and that a warrant had been issued

3

for COURTNEY TYLER JOHNSON's arrest. K.K. tried to talk COURTNEY TYLER JOHNSON into turning himself in to law enforcement.

9.      COURTNEY TYLER JOHNSON remained a fugitive until December 23, 2019, when the U.S. Marshals Service arrested him in Atlanta, Georgia.

10.      **Device 1** and **Device 2** are currently in the lawful possession of the Decatur Police Department and the Federal Bureau of Investigation. **Device 1** and **Device 2** came into the Decatur Police Department and the Federal Bureau of Investigation's possession in the following way:

   a.  The Federal Bureau of Investigation, is conducting a criminal investigation of COURTNEY TYLER JOHNSON and others regarding possible violations of (1) conspiracy to possess with intent to distribute marijuana in violation of Title 21, United States Code, Sections 846 and 841(a)(1); (2) the possession with intent to distribute at least 500 grams of a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B); (3) maintaining drug-involved premises in violation of Title 21, United States Code, Sections 856(a)(2) and (b); and (4) concealing a person from arrest in violation of Title 18, United States Code, Section 1071 (as it pertains to I.B.). The Springfield Grand Jury charged COURTNEY TYLER JOHNSON and others with the aforementioned crimes listed as "(1)", "(2)", and "(3)"

4

in a superseding indictment on September 4, 2019 (CDIL No. 19-cr-20053; R. 58).

b. The U.S. Marshals Service assisted in locating COURTNEY TYLER JOHNSON leading up to his December 23, 2019, arrest. As the U.S. Marshals Service investigated COURTNEY TYLER JOHNSON's whereabouts, they discovered in December 2019, that COURTNEY TYLER JOHNSON and I.B. were living in Atlanta, Georgia. Once the U.S. Marshals determined that COURTNEY TYLER JOHNSON was living at 60 Perimeter Center Place NE in Atlanta, Georgia, deputies set up surveillance of the area on December 23, 2019. At approximately 6:00 p.m. on December 23, 2019, deputies spotted COURTNEY TYLER JOHNSON return to the area of his residence and arrested him.

c. When COURTNEY TYLER JOHNSON was taken into custody, **Device 1** and **Device 2** were discovered within his pants pocket. COURTNEY TYLER JOHNSON made his initial appearance in the Northern District of Georgia. Meanwhile, the U.S. Marshals Service transferred **Device 1** and **Device 2** to agents of the Federal Bureau of Investigation, who then sent **Device 1** and **Device 2** to the affiant, in the Central District of Illinois.

d. **Device 1** and **Device 2** are currently within law enforcement's possession within the Central District of Illinois. Therefore, while the Decatur Police Department and the Federal Bureau of Investigation might already have

5

all necessary authority to examine **Device 1** and **Device 2**, I seek this additional warrant out of an abundance of caution to be certain that an examination of **Device 1** and **Device 2** will comply with the Fourth Amendment and other applicable laws.

11.     **Device 1** and **Device 2** are currently in storage at **FBI evidence storage in Springfield, Illinois** In my training and experience, I know that **Device 1** and **Device 2** has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when **Device 1** and **Device 2** first came into the possession of the U.S. Marshals Service, the Federal Bureau of Investigation, and the Decatur Police Department.

## USE OF ELECTRONIC DEVICES WHILE A FUGITIVE

12.     On August 7, 2019, Law enforcement personnel viewed the Facebook page associated with:

| | |
|---|---|
| Facebook User ID: | 799668227 |
| Facebook Username: | gottis.way.9 |
| Facebook Username: | Courtney Johnson |



*Figure 1:  Facebook Profile Picture for*
*Facebook Name Courtney Johnson*

Agents investigating the COURTNEY TYLER JOHNSON are familiar with what he looks like based on this investigation. On multiple instances law enforcement has conducted video and in-person surveillance of COURTNEY TYLER JOHNSON. Based on coordination with other law enforcement agents investigating COURTNEY TYLER JOHNSON, the affiant believes the profile picture for the Facebook user gottis.way.9 depicts COURTNEY TYLER JOHNSON. The account's timeline indicated the profile picture was updated on August 6, 2019, at 12:06 AM further indicating this had been accessed recently.



*Figure 2: Facebook Timeline event for Facebook Name Courtney Johnson*

13.     On August 8, 2019, a U.S. Magistrate judge in the Central District of Illinois issued a search warrant (CDIL No. 19-MJ-7173) to Facebook for information associated with Facebook user gottis.way.9, user ID 799668227. Facebook's response included, but was not limited to, the following: (1) the account had registered email addresses of:          mac34ty@yahoo.com,     ctjohnson@eiu.edu,     and gottis.way.9@facebook.com; and (2) hometown of Decatur, Illinois.

7

14.    On October 1, 2019, law enforcement interviewed Tera Robinson. Prior to the interview, law enforcement had identified Robinson as a previous girlfriend of COURTNEY TYLER JOHNSON and that her primary residence was in the Atlanta, Georgia area. Robinson also has Decatur, Illinois real estate properties in her name. During the investigation, law enforcement determined these properties were purchased with U.S. currency by COURTNEY TYLER JOHNSON, which were proceeds from his Drug Trafficking Organization. During the interview, Robinson acknowledged she and COURTNEY TYLER JOHNSON had a previous dating relationship that ended in early 2019. Robinson had continued to communicate with COURTNEY TYLER JOHNSON primarily by Instagram. Robinson advised communicating with COURTNEY TYLER JOHNSON as recently as September 19, 2019, via Instagram.  Robinson advised that COURTNEY TYLER JOHNSON's account was "gottisway". Robinson showed law enforcement her cellular telephone which had her Instagram application installed. Robinson's Instagram account showed messages from another Instagram account named "gottisway".

15.    Law enforcement reviewed the photograph associated with the Instagram account "gottisway" (shown in Figure 3).

8



*Figure 3: Instagram Profile Picture*
*Instagram Identifier: gottisway*

Law enforcement believes that the photo is that of COURTNEY TYLER JOHNSON. The picture depicts COURTNEY TYLER JOHNSON wearing specific jewelry that was seized from COURTNEY TYLER JOHNSON's known residence.

16.      Law enforcement knows from this investigation, COURTNEY TYLER JOHNSON has utilized the nickname "Gotti" and also utilized other social media accounts under the name gottisway. For example, the Facebook account associated with COURTNEY TYLER JOHNSON utilized the Facebook Username of "gottis.way.9".

17.      On October 9, 2019, U.S. Magistrate Long issued a search warrant (CDIL No. 19-MJ-7206) to Instagram for information associated with Instagram account "gottisway." Instagram's response to law enforcement on October 9, 2019, included, but was not limited to, the following:  (1) the account had registered email addresses of: mac34ty@yahoo.com; (2) the account had been logged into from a device utilizing an Internet Protocol (IP) address associated with Sprint as recently as October 9, 2019; (3) on July 21, 2019, at 20:03:58 UTC, the account was accessed from an IP address (version 6, also commonly referred to as an IPv6 address) of

9

2600:0001:c46b:e942:184d:87f0:a6f8:263b; and (4) the content posted to the account included the following picture:



*Figure 4: Instagram Posted Content on 04/16/2019*
*Instagram Identifier: gottisway*

Law enforcement believes that the photo portrays COURTNEY TYLER JOHNSON. The picture depicts COURTNEY TYLER JOHNSON wearing specific jewelry that was seized from Target Subject's known residence.

18.    The Instagram search warrant return indicated that COURTNEY TYLER JOHNSON used a mobile device assigned a Sprint mobile IP address to conduct his activity on Instagram. The Instagram return for gottisway also showed that COURTNEY TYLER JOHNSON engaged in the following Instagram message exchange on October 9, 2019, with user account "ball_in_heave_dolla," which lists its user as "Wesley Constant," a Decatur resident communicating with COURTNEY TYLER JOHNSON during March and May 2019:

```
CONSTANT:      I need 1 of them gotta find a good puller tho
JOHNSON:       I got a 3500
CONSTANT:      [sends an unknown image]
JOHNSON:       I swear I do with a RV trailer n Kc go get it
CONSTANT:      Shit I will omm
```

10

| JOHNSON: | Ok I'm finna get it together u got someone that can drive it |
| CONSTANT: | Yes |

Based on my training, experience, and familiarity with COURTNEY TYLER JOHNSON and JOHNSON DTO throughout my years investigating COURTNEY TYLER JOHNSON, I believe that his reference to a "3500" refers to the 2016 Chevrolet 3500 truck JOHNSON and "Kc" (Kansas City) co-conspirator James Allen purchased for their mule, Lindell Willey.

19.    On November 4, 2019, law enforcement served a subpoena on Sprint requesting information related to the IPv6 address (2600:0001:c46b:e942:184d:87f0:a6f8:263b) used to access the Instagram account "gottisway" on July 21, 2019, at 20:03:58 UTC.  Sprint's response on November 14, 2019, included, but was not limited to, the following as it related to the device/account that utilized the aforementioned IPv6 address on the aforementioned date and time:

| Account Number | 365308849 |
| --- | --- |
| Account Established | 07/12/2019 |
| Status | Active through date searched |
| Account Billing Address | Ricky Mendoza 12013 W Thunderbird Rd El Mirage, AZ  85335 |
| Account Type | Boost Prepaid Account |
| Subscriber ID | 65252091221 |
| PTN/MDN | 6233741125 |
| IMSI | 310120166250392 |
| MSID | 6026724349 |
| ESN | 089496884007487637 |

20.     The PTN/MDN refers to a phone number assigned to the Sprint Account. Here, the Sprint Account phone number is "6233741125" telephone number. That account was established on July 12, 2019, which is the day after law enforcement executed search warrants on July 11, 2019.

21.     Deputy U.S. Marshals verified with Sprint that account for the telephone number above was serviced by Sprint Corp.

22.     Deputies with the U.S. Marshals Service also served a search warrants on Sprint issued by the Central District of Illinois under case numbers 19-MJ-7242 and 19-MJ-7243 for precise phone location information for the account above. The information provided allowed deputies to identify multiple locations in the Atlanta area where this phone was used, including in the vicinity where COURTNEY TYLER JOHNSON was arrested.

23.     Based on the facts above and in my training and experience, I believe that evidence regarding violations of (1) conspiracy to possess with intent to distribute marijuana in violation of Title 21, United States Code, Sections 846 and 841(a)(1); (2) the possession with intent to distribute at least 500 grams of a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B); (3) maintaining drug-involved premises in violation of Title 21, United States Code, Sections 856(a)(2) and (b); and (4) concealing a person from arrest in violation of Title 18, United States Code, Section 1071 (as it pertains to I.B.) are

stored on **Device 1** and **Device 2** recovered from COURTNEY TYLER JOHNSON's

person at the time of his arrest on December 23, 2019. Such evidence includes:

    a.  lists of customers and related identifying information;

    b.  types, amounts, and prices of drugs trafficked as well as dates, places, and

        amounts of specific transactions;

    c.  any information related to sources of drugs (including names, addresses,

        phone numbers, or any other identifying information);

    d.  any information recording COURTNEY TYLER JOHNSON's schedule or

        travel from December 2017 to the present;

    e.  bank records, checks, credit card bills, account information, and other

        financial records;

    f.  Evidence of user attribution showing who used or owned **Device 1** and

        **Device 2** at the time the things described in this warrant were created,

        edited, or deleted, such as logs, phonebooks, saved usernames and

        passwords, documents, and browsing history;

    g.  Consciousness of guilt regarding COURTNEY TYLER JOHNSON's

        awareness of his criminal activity; and

    h.  Communications with Ivana Booker regarding the need to conceal

        COURTNEY TYLER JOHNSON's whereabouts from law enforcement due

        to his outstanding arrest warrant.

## TECHNICAL TERMS

24.     Based on my training and experience, I use the following technical terms to convey the following meanings:

      a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

      b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital

cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by

15

periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

e.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

25.     Based on my training, experience, and research, I know that **Device 1** and **Device 2** have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

26.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been

16

viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

27.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how **Device 1** and **Device 2** were used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on **Device 1** and **Device 2** because:

a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.   Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.   The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a

17

dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

28. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

29. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

30.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,
s/Chad Ramey

Chad Ramey
Special Federal Officer
Federal Bureau of Investigation

Attested to by reliable electronic means
in accordance with Fed. R. Crim. P. 4.1 on February ____, 2020.

s/Eric Long

HONORABLE ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE

19

## ATTACHMENT A

The property to be searched includes **Device 1** and **Device 2** described as follows:

      a.  **Device 1 is an LG cellular telephone.** The Device is currently located in **FBI evidence storage under evidence number E03347715**.

      b.  **Device 2 is an Apple iPhone, model number A1688.** The Device is currently located in **FBI evidence storage under evidence number E03347716.**

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.     All records on the Device described in Attachment A that relate to violations of (1) the conspiracy to possess with intent to distribute marijuana in violation of Title 21, United States Code, Sections 846 and 841(a)(1); (2) the possession with intent to distribute at least 500 grams of a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B); (3) maintaining drug-involved premises in violation of Title 21, United States Code, Sections 856(a)(2) and (b); and (4) concealing a person from arrest in violation of Title 18, United States Code, Section 1071 and involving COURTNEY TYLER JOHNSON since December 2017, including:

     a.  lists of customers and related identifying information;

     b.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

     c.  any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

     d.  any information recording COURTNEY TYLER JOHNSON's schedule or travel from December 2017 to the present;

     e.  all bank records, checks, credit card bills, account information, and other financial records;

     f.  Consciousness of guilt regarding COURTNEY TYLER JOHNSON's knowledge of these violations; and

g.  Communications with Ivana Booker regarding the need to conceal COURTNEY TYLER JOHNSON's whereabouts from law enforcement due to his outstanding arrest warrant.

2.  Evidence of user attribution showing who used or owned **Device 1** and **Device 2** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

2

# ADDENDUM A



SEALED

AO 91 (Rev. 11/11)  Criminal Complaint



FILED

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois

JUL −3 2019

CLERK OF THE COURT
CENTRAL DISTRICT COURT
URBANA, ILLINOIS

United States of America

v.

COURTNEY TYLER JOHNSON, a/k/a "Erve;"
TIMOTHY LEE EALEY, a/k/a "Rico;"
JENNIFER FISHER, a/k/a "Jennifer Mann;"
GABRIELLE JOHNSON; and
JACKIE D. CAMPBELL.

Defendant(s)

Case No.  19-MJ- 7133

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
Beginning on an unknown date but no later than on or about August 8, 2018, and continuing to on or about May 1, 2019,
in Macon County in the Central District of Illinois and elsewhere, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 846, 841(a)(1) & 841(b)(1)(C) | Conspiracy to possess with the intent to distribute marijuana |

A TRUE COPY
ATTEST
SHIG YASUNAGA, CLERK OF COURT
BY:
DEPUTY CLERK
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
DATE: 7/3/19

This criminal complaint is based on these facts:

See the attached affidavit of FBI Special Agent Mark T. Hill, which is incorporated herein by reference.

☒ Continued on the attached sheet.

s/Mark Hill

_____
Complainant's signature

FBI Special Agent Mark T. Hill
Printed name and title

Sworn to before me and signed in my presence.

s/Eric Long

Date: 7/3/2019

City and state: Urbana, IL

_____
Judge's signature

Hon. Eric I. Long, U.S. Magistrate Judge, Central Dist. of Illinois
Printed name and title

## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT

I, Mark T. Hill, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since March 2000. I am currently assigned to investigate complex criminal enterprises, including Drug Trafficking Organizations (DTO). I have participated in narcotics investigations involving the manufacture, transportation, and distribution of controlled substances. These investigations have resulted in the seizure of controlled substances and proceeds from the sale of controlled substances, as well as arrests and convictions of drug traffickers. I am familiar with, and have utilized, normal methods of investigation, including, but not limited to physical and electronic surveillance, questioning of witnesses, the use of search and arrest warrants, the use of informants, the use of pen registers, analysis of telephone records, and the utilization of undercover agents.

2.     I make this affidavit in support of a criminal complaint charging **COURTNEY TYLER JOHNSON**, a/k/a "Erve;" **TIMOTHY EALEY**, a/k/a "Rico;" **GABRIELLE JOHNSON; JENNIFER FISHER;** and **JACKIE CAMPBELL** with Conspiracy to Possess with Intent to Distribute and Distribution of a Controlled Substance, namely marijuana, in violation of Title 21, United States Code, Sections 846, and 841(a)(1).

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to establish that **COURTNEY TYLER JOHSON, a/k/a "Erve;" TIMOTHY EALEY, a/k/a "Rico;" GABRIELLE JOHNSON; JENNIFER FISHER;** and **JACKIE CAMPBELL**, knowingly became members of a conspiracy to possess with the intent to distribute marijuana within the Central District of Illinois and elsewhere between an unknown time but no later than on or about August 2018, to on or about May 1, 2019, with an intent to advance that conspiracy.

## FACTS ESTABLISHING PROBABLE CAUSE

5.      Federal Bureau of Investigation (FBI) Special Agent Mark Hill has been involved in the investigation concerning the sale and delivery of cocaine and cannabis by COURTNEY TYLER JOHNSON (hereinafter "JOHNSON") and members of his Drug Trafficking Organization (JOHNSON DTO) for more than twenty-four months. Throughout the course of this investigation, agents have used a number of investigatory tools to identify the members of the JOHNSON DTO, the means and methods used by the JOHNSON DTO, the facilities maintained by the JOHNSON DTO to further their drug trafficking activities, and the premises and vehicles used by the JOHNSON DTO to promote and conceal those drug-trafficking activities.

2

6.      In July 2016, the FBI initiated a joint-investigation with the Decatur Police Department regarding the illegal drug trafficking activity of the JOHNSON DTO based on source information that JOHNSON is a major drug source for the Decatur, Illinois area. During the course of the investigation, I have learned about the membership and operations of the JOHNSON DTO through discussions with confidential sources, discussions with other law enforcement officers, and surveillance of JOHNSON DTO members.

7.      Throughout this investigation confidential source reporting has been consistent in identifying JOHNSON as the main supplier of cocaine to the Macon County, Illinois area, which is within the Central District of Illinois. These sources have also admitted to purchasing both powder and crack cocaine from JOHNSON's main distributors. All confidential sources state that JOHNSON will not deal with any buyer direct.

### Target Subjects

8.      The TARGET SUBJECTS associated with the JOHNSON Drug Trafficking Organization (DTO) include:

   a.  COURTNEY TYLER JOHNSON – identified Leader of the JOHNSON DTO. JOHNSON's primary residence has been identified as 25 N. Central Avenue #309, St. Louis (Clayton), Missouri. JOHNSON also stays at the residence occupied by his mother (JENNIFER FISHER) located at 3808 Eagle Claw Drive in Springfield, Illinois. JOHNSON has no known legitimate employment.

3

b. GABRIELLE JOHNSON – JOHNSON's sister who resides at 120 S. Center Street in Collinsville, Illinois. GABRIELLE is connected to several pieces of residential real estate in the Decatur, Illinois area. Pen register trap and trace (PRTT) data from one of JOHNSON's known cellular phone numbers shows more than 100 contacts with 217-520-5608, a cellular telephone utilized by GABRIELLE, since December 2018.

c. TIMOTHY EALEY – primary address of 10 Whippoorwill in Decatur, Illinois. EALEY has been identified as one of JOHNSON's re-distributors of cocaine and cannabis in the Decatur, Illinois area. Two controlled purchases of cocaine from EALEY and EALEY's son, DALTON DREW, have been made. PRTT data from one of JOHNSON's known cellular phone numbers shows more than 150 contacts with 217-520-4698, a cellular telephone utilized by EALEY, since December 2018.

d. JENNIFER FISHER – JOHNSON's mother. Primary address of 3808 Eagle Claw Drive in Springfield, Illinois. JENNIFER FISHER was the passenger in a car driven by her husband and JOHNSON's stepfather, SHANNON FISHER, during a traffic stop in February 2018 in which law enforcement seized $23,500 from the glove compartment of a vehicle she and SHANNON FISHER occupied.

e. JACKIE CAMPBELL – primary address of 2595 Peru Road, Decatur, Illinois. Records for one of JOHNSON's known cellular phone numbers show 17 contacts with CAMPBELL since March 1, 2019.

### Additional Subjects

9.     In addition to the TARGET SUBJECTS identified above, the following individuals associated with the JOHNSON Drug Trafficking Organization (DTO) include:

a. KATHRYN KELSHEIMER – JOHNSON's grandmother. KELSHEIMER has rented vehicles at the Decatur, Illinois airport that JOHNSON has been seen driving. KELSHEIMER's name has been used to rent storage units in Decatur and Springfield, Illinois. These storage units have been identified as facilities for JOHNSON to store illegal narcotics.

b. MARQUEVIN SMITH – primary address of 724 W. Division Street in Decatur, Illinois. SMITH has been identified as one of JOHNSON's main re-distributors of cocaine in the Decatur, Illinois area. Two controlled purchases of cocaine from SMITH have been made. PRTT data from one of JOHNSON's known cellular phone numbers shows more than 60 contacts with 217-619-4442, a cellular telephone utilized by SMITH, since December 2018. PRTT data from JOHNSON's previously-used cellular telephone number 217-622-8027 shows more than 450 contacts with 217-619-4442 (SMITH) between January 2018 and November 2018.

c.  DEANDRI BURTON – primary address of 1212 Lincoln Park in Decatur, Illinois. BURTON has been identified as one of JOHNSON's re-distributors of crack cocaine in the Decatur, Illinois area. BURTON has traveled with JOHNSON on several occasions. Nine controlled purchases of crack cocaine from BURTON have been made. PRTT data from one of JOHNSON's known cellular phone numbers shows more than 200 contacts with 217-413-3409, a cellular telephone utilized by BURTON, since December 2018.

### Use of Storage Facilities to Traffic Marijuana

10.    Source reporting revealed that JOHNSON utilizes storage lockers to store illegal narcotics. On February 20, 2017, JOHNSON was seen by law enforcement entering the gated, storage facility known as Northwest Mini-Storage, located at 2330 Route 121, NW, in Decatur, Illinois.

11.    On February 21, 2017, documents relating to storage unit F19 ("Unit F19") were obtained showing that particular unit is assigned to and rented by Kathryn Kelsheimer, JOHNSON's grandmother. The storage unit assigned to Kelsheimer is located in the same area within the Northwest Mini-Storage premises to where law enforcement saw JOHNSON's vehicle parked on February 20, 2017. Records indicate that access into and out of the facility is monitored through an access code individual to each renter. The access code assigned to Kelsheimer was used the same day and approximate time that law enforcement saw JOHNSON enter the facility on February 20, 2017.

12.    Northwest Mini-Storage records indicate that the access code assigned to Kelsheimer was used for entry and exit twenty-four (24) times from August 19, 2016, through December 24, 2016, twelve (12) times from January 6, 2017, through February 20, 2017, and thirteen (13) times between September 28, 2017, and November 9, 2017.

13.    On March 2, 2017, a pole camera was installed in order to capture activity outside of Unit F19. Pole camera video showed JOHNSON at the locker on each of the thirteen occasions between September 28, 2017, and November 9, 2017. The visits ranged in time from three minutes to fifteen minutes with multiple visits on the same day on five occasions.

14.    Pole camera video from February 5, 2018, through July 25, 2018, revealed twenty (20) visits to Unit F19 by JOHNSON. On two occasions, May 5, 2018, and July 17, 2018, JOHNSON visited Unit F19 twice in the same day. On three occasions, March 12, 2018, at approximately 11:06 p.m., May 22, 2018, at approximately 2:29 a.m., and on July 17, 2018, at approximately 9:56 p.m., JOHNSON was observed opening up Unit F19 while a large quad-cab pickup pulling a large trailer pulled up and stopped outside of Unit F19. The visit on March 12, 2018, lasted about five minutes, the visit on May 22, 2018, lasted about 4 minutes, and the visit on July 17, 2018, lasted less than two minutes.

15.    Pole camera data on sixteen of the remaining seventeen visits between February 5, 2018, and July 25, 2018, showed JOHNSON entering Unit F19, usually after dark, and exiting carrying items such as boxes and what appeared to be trash bags. Visits lasted one minute to twelve minutes. The one visit that JOHNSON did not enter Unit F19

7

was on February 5, 2018. JOHNSON had a lock removed from Unit F19 by an employee of the storage facility.

### a. Use of Northwest Mini Storage Unit F19

16.    On July 16, 2018, a District Court Judge in the Central District of Illinois issued an order authorizing the monitoring and recording of visual, non-verbal conduct and activities inside of Unit F19 for a period of 30 days. After JOHNSON left Unit F19 on July 17, 2018, agents were able to install video surveillance equipment inside Unit F19. Below is a summary of JOHNSON's visits to Unit F19, as recorded by pole camera outside of Unit F19 and video surveillance inside Unit F19 between July 18, 2018 and August 14, 2018:

    a. 7/18/2018
        i.   8:12 p.m. – JOHNSON arrives at Unit F19 driving a newer white four-door vehicle. JOHNSON unlocked and entered Unit F19.
        ii.  8:13 p.m. – JOHNSON carried out a box and placed the box in the backseat of vehicle.
        iii. 8:14 p.m. - JOHNSON closed door and locked Unit F19 and leaves area in the vehicle.
        iv.  Surveillance cameras inside Unit F19 showed JOHNSON removing five (5) clear, sealed packages, suspected of holding at least one-pound of cannabis, from a blue plastic bin and wrapping the five packages in brown paper and placing all five packages into a brown box.

    b. 7/25/2018
        i.   8:22 p.m. - JOHNSON arrived at Unit F19 in a white Chrysler 300 followed by a dark colored Dodge Challenger driven by a female, possibly GABRIELLE JOHNSON. JOHNSON pulled out a blue plastic bin from inside Unit F19 and both JOHNSON and the female go through the bin. The female removed two items from the bin and placed those items into the trunk of the Dodge. JOHNSON removed a sack from

8

inside Unit F19 and placed the sack into the trunk of the Dodge.

    ii. 8:25 p.m. – both left the area after JOHNSON secures the door to Unit F19.

c. 8/9/2018

    i. 9:32 p.m. – JOHNSON, wearing a white t-shirt and black sweat pants with a white stripe, walked up to Unit F19 as a large truck pulling an enclosed trailer pulled up to Unit F19 and stops. JOHNSON opens the door to Unit F19 as the driver of the truck, a white male, exits the cab and walks toward the back of the trailer. JOHNSON also walks toward the back of the trailer. JOHNSON makes nine trips back and forth from the back of the trailer into Unit F19 each time placing one large brown box into Unit F19 then returning to the back of the trailer empty handed. After placing the ninth box into Unit F19, JOHNSON remained in Unit F19.

    ii. 9:36 p.m. – white male gets back into the driver's seat of the truck. A white female is observed sitting in the front passenger seat of the truck. The truck and trailer pull away.

    iii. 9:37 p.m. – JOHNSON exits Unit F19 then closes and locks the door to Unit F19. JOHNSON then reaches down to the ground and appears to grab an item off the ground with his left hand. JOHNSON then walks away. It appears that lights to a nearby vehicle turn on. The lights then fade away as if the vehicle is pulling away.

    iv. Surveillance cameras inside Unit F19 show JOHNSON opening a brown box by pealing back tape on top of the box. JOHNSON, using the light from a cellular telephone appears to be checking the contents of the box.

d. 8/10/2018

    i. 8:32 p.m. – a white sedan, similar to JOHNSON's white Chrysler 300, drove by and parked out of camera view east of Unit F19.

    ii. 8:33 p.m. – JOHNSON, wearing a white t-shirt and brown shorts, walked up to Unit F19, unlocked and opened the door to Unit F19 and stepped inside. A light was seen inside Unit F19.

    iii. 8:38 p.m. – JOHNSON exited Unit F19 carrying a large brown box and walked toward the area where the white sedan was seen driving toward.

iv. 8:39 p.m. – JOHNSON walked back to Unit F19 empty handed, closes the door to Unit F19 and locks it. JOHNSON then walked back toward where the white sedan was seen driving toward.

v. Surveillance cameras inside Unit F19 showed JOHNSON placing five (5) clear, sealed packages, suspected of holding at least one-pound of cannabis, into a large clear bag. JOHNSON then places the clear bag into a brown box. JOHNSON is using the light from a cellular telephone. JOHNSON then exited Unit F19 and returned a short time later and closes the door.

e. 8/14/2018

i. 9:18 p.m. – JOHNSON, wearing a white t-shirt and shorts walked up to Unit F19 from the east rolling two bicycles. JOHNSON unlocked and opened Unit F19 after laying the bicycles down near Unit F19. JOHNSON removed one brown box from inside Unit F19 and carried the box to the east of Unit F19 and returned to Unit F19 empty handed. JOHNSON does this five times removing five brown boxes, one at a time, from Unit F19.

ii. 9:20 p.m. – JOHNSON returned to Unit F19 after carrying out the 5th box. JOHNSON rolled one bicycle into Unit F19 and stepped out. JOHNSON then carried the other bicycle and he walked east away from Unit F19.

iii. 9:21 p.m. – JOHNSON returned to Unit F19 empty handed and looks inside Unit F19 then walked east away from Unit F19. JOHNSON returned to Unit F19 with an unknown item in his left hand. JOHNSON stepped inside Unit F19 and bent over as if he was placing the unknown item on the floor against the wall just inside the door to Unit F19.

iv. 9:22 p.m. – JOHNSON stepped out of Unit F19, closed and locked the door to Unit F19 and walked away toward the east.

v. Surveillance cameras inside Unit F19 showed JOHNSON removing five large brown boxes, one at a time, from Unit F19 and carrying the boxes out then returning empty handed. JOHNSON appeared to check the contents of the second box he removed. JOHNSON used the light from a cellular telephone he was holding when checking the contents.

17. On August 16, 2018, a Magistrate Judge in the Central District of Illinois issued an order re-authorizing the monitoring and recording of visual, non-verbal

conduct and activities inside of Unit F19 for a period of 30 days. Below is a summary of

JOHNSON's visits to Unit F19, as recorded by pole camera outside of Unit F19 and video

surveillance inside Unit F19 between August 17, 2018 and August 29, 2018:

   a. 8/17/2018
- i. 8:37 p.m. – a dark-colored sedan pulled up to Unit F19 and stopped. JOHNSON exited the front passenger seat and walked to the rear of the vehicle leaving the passenger side door open. JOHNSON opened the trunk then closed the trunk quickly. JOHNSON then walked to Unit F19. It appears that JOHNSON is holding something in his left hand. JOHNSON unlocked and opened the door to Unit F19 and stepped inside.
- ii. 8:38 p.m. – JOHNSON stepped out of Unit F19, closed the door to Unit F19 and returns to the front passenger seat of the vehicle. The vehicle pulled away.
- iii. Surveillance cameras inside Unit F19 showed JOHNSON entering Unit F19 with an unknown item in his left hand. JOHNSON then exited Unit F19 empty handed and closed the door.

   b. 8/19/2018
- i. 7:57 p.m. - JOHNSON arrived at Unit F19 in a white Chrysler sedan. JOHNSON exited the driver's seat and left the driver's door open. JOHNSON unlocked and opened the door to Unit F19 and stepped inside.
- ii. 7:58 p.m. – JOHNSON walked out of Unit F19 carrying what appeared to be a bag with handles in his right hand. JOHNSON opened the trunk to the white Chrysler and placed the bag into the trunk. JOHNSON closed the trunk to the Chrysler then walks back to Unit F19 and closed and locked the door. JOHNSON got back into the driver's seat and pulled away. No other occupants were seen in the vehicle.
- iii. Surveillance cameras inside Unit F19 showed JOHNSON opening the door then stepping inside Unit F19. JOHNSON leaned over as if he was picking up an item from the floor. JOHNSON walked out of Unit F19 carrying a bag with handles in his right hand. JOHNSON closed the door to Unit F19.

c. 8/22/2018
  i. 7:41 p.m. - JOHNSON arrived at Unit F19 in a white Chrysler 300 displaying Illinois license plate 780405. JOHNSON exited the driver's seat and walked to Unit F19. JOHNSON unlocked and opened the door to Unit F19 and stepped inside.
  ii. 7:42 p.m. – JOHNSON exited Unit F19 carrying a small bag in his left hand and walked to the back of the white Chrysler and opened the trunk then closed the trunk.
  iii. 7:43 p.m. – JOHNSON returned to Unit F19 empty handed, closed the door and locked Unit F19. JOHNSON returned to the driver's seat of the white Chrysler and pulled away.
  iv. Surveillance cameras inside Unit F19 showed JOHNSON opening the door and stepping inside Unit F19. JOHNSON leaned over as if he was picking up an item on the floor. JOHNSON then walked out of Unit F19 with what appeared to be a small plastic bag in his left hand. JOHNSON returned and closed the door to Unit F19.

d. 8/23/2018
  i. 9:22 p.m. - JOHNSON arrived at Unit F19 in a dark colored sedan. JOHNSON exited the driver's seat and walked to Unit F19. JOHNSON, wearing a white T-shirt, unlocks and opens the door to Unit F19 and steps inside.
  ii. 9:23 p.m. – JOHNSON stepped out of Unit F19, closed and locked the door to Unit F19. JOHNSON entered the driver's seat of the dark colored sedan and pulls away.
  iii. Surveillance cameras inside Unit F19 showed JOHNSON opening the door then stepping inside Unit F19. JOHNSON moved around some boxes and it appeared that JOHNSON removed an item from one box and placed it into another. JOHNSON exited Unit F19 and closed the door.

e. 8/27/2018
  i. 8:18 p.m. – Large truck that appeared to be a Dodge quad cab with four running lights on the roof pulling a black enclosed trailer pulled up and stopped outside of Unit F19. As the truck came to a stop, JOHNSON came into view from the north walking behind the trailer toward Unit F19.
  ii. 8:19 p.m. – After the vehicle stopped, the driver, an older white male, wearing jeans and a short sleeve button-down shirt, exited the driver's seat and walked toward the rear of the trailer as JOHNSON was opening the door to Unit F19.

When the driver's door to the vehicle opened the cab light turned on showing a white male with dark-colored short hair, some facial hair, wearing a black sleeveless shirt, sitting in the front passenger seat. JOHNSON stepped inside Unit F19 then exited and walked toward the rear of the trailer. JOHNSON then returned to Unit F19 and went inside. JOHNSON repeated the back and forth from inside Unit F19 to the rear of the trailer eight (8) additional times for a total of nine times.

iii.  8:21 p.m. – The driver from truck appeared at the rear driver's side corner of the trailer. The driver then walked north out of view.

iv.  8:22 p.m. – Driver returned to truck and opened the rear driver's side passenger door. The cab light turned on still showing the white male still sitting in front passenger seat. JOHNSON was seen closing the door to Unit F19. The driver closed door to truck and walked toward the rear of the trailer and appeared to meet up with JOHNSON as both moved to the north of Unit F19 out of view. Driver returned to truck, entered driver's seat and pulled away. After the truck and trailer pulled away the door to Unit F19 was closed and JOHNSON was no longer in sight.

v.  Surveillance cameras inside Unit F19 showed JOHNSON opening the door then stepping inside Unit F19. JOHNSON moved around a couple large boxes and stepped out of Unit F19 walking toward the west. The passenger-side trailer wheels were seen just outside of Unit F19. JOHNSON made nine trips from outside of Unit F19 into Unit F19 placing a large brown box inside Unit F19 each time. JOHNSON exited Unit F19 empty handed and closed the door.

f.  8/29/2018

i.  7:30 p.m. – A white Chrysler 300 pulled up and stopped outside of Unit F19.  JOHNSON exited the driver's seat wearing a white shirt and black pants with a white stripe on the sides. As JOHNSON exited the driver's seat, the trunk on the vehicle opened up. JOHNSON walked to Unit F19, unlocked and opened the door. JOHNSON returned to the trunk of the vehicle, leaned in, and removed several loose items from the trunk and then walked into Unit F19.

ii.  7:31 p.m. – JOHNSON exited Unit F19 empty handed and returned to the trunk of the vehicle. JOHNSON removed additional similar items that JOHNSON previously removed

13

and returned to Unit F19. JOHNSON walked out of Unit F19 and returned to the trunk empty handed. JOHNSON leaned into the trunk a third time and removed more items and walked into Unit F19. JOHNSON returned to the trunk empty handed. JOHNSON leaned into the trunk a fourth time and removed additional items and walked into Unit F19 (the items carried into Unit F19 appeared to be clothing items).

iii. 7:32 p.m. – JOHNSON exited Unit F19 carrying a large brown box and a large black trash bag and placed the bag into the trunk of the vehicle. JOHNSON removed some additional items from the trunk and walked into Unit F19.

iv. 7:33 p.m. – JOHNSON exited Unit F19 empty handed. JOHNSON closed and locked the door to Unit F19. JOHNSON returned to the driver's seat of the Chrysler 300 and the vehicle pulled away.

v. Surveillance cameras inside Unit F19 showed the door to Unit F19 opening. JOHNSON walked in and placed several loose items that appeared to be miscellaneous clothing items into a blue-colored plastic bin, then walked out of Unit F19. JOHNSON did this two additional times. JOHNSON then returned to Unit F19 and picked up a black trash bag, which appeared to be empty, and opened the bag. JOHNSON reached into a large brown box and tore open a black plastic bag that was inside the brown box. JOHNSON removed five (5) clear packs that contained what appeared to be a large quantity of cannabis and placed each pack, one at a time, into the empty black trash bag. JOHNSON exited with the black plastic trash bag. JOHNSON entered Unit F19 empty handed then walked out. The door to Unit F19 closes.

18.  On August 29, 2018, a magistrate judge in the Central District of Illinois issued a search and seizure warrant for the location known as Storage Unit F19 located within the Northwest Mini-Storage facility, located at 2330 Route 121 NW., Decatur, Illinois, to search for evidence of violations of 21 U.S.C. 841(a)(1).

19.  On August 29, 2018, at approximately 11:00 p.m., law enforcement officers executed the search warrant at Storage Unit F19. The results of the search revealed

twelve (12) large brown boxes containing a combined total of approximately one-hundred and sixty-one (161) vacuum-sealed clear packs containing what investigators believe is at least 1-pound of cannabis in each pack. The cannabis was packed in a zip-lock type clear bag then secured again in a vacuum-sealed bag. The unopened boxes were sealed with clear packaging tape. Inside the sealed brown boxes were thick black plastic trash-type bags that were secured with a zip-tie fastener. Inside each black plastic bag were at least eighteen (18) clear, vacuum-sealed packs of cannabis.

20.     Below is a summary of JOHNSON's visits to Unit F19, as recorded by pole camera outside of Unit F19 and video surveillance inside Unit F19 on August 30, 2018 and September 12, 2018:

    a. 8/30/2018
          i. 7:07 p.m. – Dark-colored Dodge four-door vehicle, displaying an Illinois license plate (partial – last four characters "3416") parked outside of Unit F19. As JOHNSON exited the driver's seat, the trunk of the vehicle opens. JOHNSON unlocked and opened the door to Unit F19 and stepped inside Unit F19.
          ii. 7:09 p.m. – JOHNSON exited Unit F19 carrying a large brown box and placed the box into the trunk of the vehicle.
          iii. 7:10 p.m. – JOHNSON returned to Unit F19 and exited carrying a large black plastic bag in his left hand. JOHNSON placed the bag into the trunk then closed the trunk and returned to Unit F19.
          iv. 7:11 p.m. – JOHNSON closed and locked the door to Unit F19, returned to the driver's seat of the vehicle and the vehicle pulled away.
          v. Surveillance cameras inside Unit F19 showed the door to Unit F19 opening. JOHNSON entered Unit F19 and looked into several of the open brown boxes and removed approximately nine (9) clear packs from the open boxes and placed those nine packs into another open box on top of a black plastic bag inside of that box. JOHNSON then closed the flaps to the box and appeared to place the clear tape already attached to the

15

box over the top to secure the flaps. JOHNSON then carried the box out of Unit F19. JOHNSON returned to Unit F19 and pulled down a large brown box from a stack of three brown boxes. JOHNSON opened the box and tore open the black plastic bag inside the box. JOHNSON appeared to pick up a clear pack from another open box inside of Unit F19 and placed that pack into the black plastic bag he just tore open. JOHNSON carried the black plastic bag out of Unit F19. JOHNSON closed the door to Unit F19

vi. Investigators discovered that JOHNSON's grandmother, KATHRYN S. KELSHEIMER, had a 2012 Dodge four-door, Illinois license plate AC8-3416, registered in her name at the time.

b. 9/12/2018

  i. 7:36 p.m. – 7:37 pm - Dark-colored Dodge four-door vehicle drove by Unit F19 and continued west out of sight. A short time later, the same vehicle, displaying an Illinois license plate (partial – first two characters "AC") appeared from the southeast. The vehicle pulled up and parked facing west outside of Unit F19. JOHNSON exited the driver's seat of the vehicle. JOHNSON walked up to Unit F19, unlocked and opened the door to Unit F19 and stepped inside.

  ii. 7:39 p.m. – JOHNSON exited Unit F19 carrying a large black plastic trash bag in his right hand. JOHNSON opened the trunk to the vehicle and placed the bag into the trunk of the vehicle. JOHNSON left the trunk open then returned to Unit F19 and stepped inside.

  iii. 7:40 p.m. – JOHNSON stepped out of Unit F19 carrying two large black plastic trash bags, one in each hand, and placed the bags into the trunk. JOHNSON closed the trunk and walked back to Unit F19 and stepped inside for a few seconds and exited Unit F19. JOHNSON closed and locked the door to Unit F19 and returned to the driver's seat of the vehicle. The vehicle pulled away.

  iv. Surveillance cameras inside Unit F19 showed the door to Unit F19 opening. JOHNSON stepped inside Unit F19 and used a light from a cellular phone he was holding. JOHNSON opened the flaps to a large brown box. Inside the brown box was a black plastic trash bag. JOHNSON appeared to be rummaging through other boxes. JOHNSON pulled out the trash bag from the box he first opened and carried that bag out of Unit F19.

16

JOHNSON reentered Unit F19 empty handed. JOHNSON then picked up two large plastic trash bags from inside Unit F19 and carried both bags out. JOHNSON stepped back into Unit F19 empty handed, looked around for a few seconds and stepped out. JOHNSON closed the door to Unit F19.

v. Law enforcement discovered after the 8/30/2018 visit to Unit F19, that JOHNSON's grandmother, KATHRYN S. KELSHEIMER, had a 2012 Dodge four-door, Illinois license plate AC8-3416, registered in her name at the time of the visit.

21.    JOHNSON continued to occupy Unit F19 throughout 2018 and into 2019 in a similar fashion as described above. JOHNSON visited Unit F19 on the following dates:

a. September 24, 2018;

b. October 3, 2018;

c. October 21, 2018;

d. October 30, 2018;

e. November 4, 2018;

f. November 13, 2018;

g. November 26, 2018;

h. December 16, 2018;

i. February 10, 2019;

j. February 16, 2019; and

k. March 3, 2019.

22.    On February 16, 2019, JOHNSON drove the 2008 Chevrolet Avalanche to Unit F19. This time, JOHNSON removed two large boxes from Unit F19 and placed them into the 2008 Chevrolet Avalanche before driving away. After leaving Unit F19,

JOHNSON traveled to Unit A42, which is registered to DEANDRI BURTON. Once at Unit A42, JOHNSON removed the two boxes from the 2008 Chevrolet Avalanche and left them inside Unit A42 before JOHNSON drove away.

23. On March 6, 2019, at approximately 12:45 a.m., JOHNSON drove the 2008 Chevrolet Avalanche to Unit F19. JOHNSON removed a large trash bag, another large item, and a large brown box from Unit F19 and placed them inside the 2008 Chevrolet Avalanche. JOHNSON then drove away from Unit F19 but arrived at Unit A42 minutes later. JOHNSON and an unknown individual take items out of the 2008 Chevrolet Avalanche, including the large brown box, and left them inside Unit A42.

**b. Use of Northwest Mini Storage Unit A42**

24. On February 16, 2019, at approximately 9:05 p.m., a Chevrolet Avalanche pulled up and stopped outside of Unit A42 located within the Northwest Mini Storage facility located at 2330 IL Highway 121 in Decatur, Illinois. JOHNSON, wearing a red hooded sweat suit, exited the driver's seat. JOHNSON unlocked and opened Unit A42. JOHNSON returned to the vehicle and opened the rear passenger side door and removed one of the large brown boxes JOHNSON placed into his vehicle minutes earlier. JOHNSON carried the large brown box into Unit A42. A minute later, JOHNSON exited Unit A42 empty handed. JOHNSON closed and locked the door to Unit A42. JOHNSON returns to the driver's seat. The vehicle then pulled away.

25.     Investigators discovered that Unit A42 is registered to DEANDRI BURTON,[1] telephone number 217-413-3409, with a move-in date of December 17, 2018.

26.     On February 16, 2019, JOHNSON drove the 2008 Chevrolet Avalanche to Unit F19. This time, JOHNSON removed two large boxes from Unit F19 and placed them into the 2008 Chevrolet Avalanche before driving away. After leaving Unit F19, JOHNSON traveled to Unit A42, which is registered to DEANDRI BURTON. Once at Unit A42, JOHNSON removed the two boxes from the 2008 Chevrolet Avalanche and left them inside Unit A42 before JOHNSON drove away.

27.     On March 6, 2019, at approximately 12:52 a.m., law enforcement observed a Chevrolet Avalanche pull up and stop outside of Unit A42. The last three digits of the front license plate were "763." JOHNSON exited the driver's seat as a taller black male exited the front passenger seat. JOHNSON unlocked and opened the door to Unit A42 as the taller subject opened the rear passenger side door to the vehicle. The taller subject carried an item into Unit A42 as JOHNSON opened the rear driver's side door to the

---

[1] By way of background, on May 17, 2018, law enforcement conducted a video- and audio-recorded controlled purchase of approximately 58.6 grams of crack cocaine from DEANDRI BURTON using $2400 in pre-recorded money. The transaction took place in the area of Union and Olive Streets in Decatur, Illinois. BURTON sent a subject identified as ROBERT L. GRAY to meet with the confidential informant and that meeting was captured on audio and video recording equipment during the purchase of approximately 58.6 grams of crack cocaine. Surveillance was conducted throughout the duration of the transaction. Additionally, on July 2, 2018, law enforcement conducted an audio- and video-recorded controlled purchase of approximately 29 grams of crack cocaine from DEANDRI BURTON using $1200 in pre-recorded money. The transaction took place in the area of Union and Olive Streets in Decatur, Illinois. Surveillance was conducted throughout the duration of the transaction

vehicle. The taller subject exited Unit A42 and stood near the open rear driver's side door. JOHNSON carried a large box into Unit A42 as the taller subject followed JOHNSON into Unit A42. Both JOHNSON and the taller subject exited Unit A42 empty handed. JOHNSON closed and locked the door to Unit A42 and returned to the driver's seat of the vehicle. The taller subject walked around the vehicle and closed the rear passenger side door then entered the front passenger side seat area. The vehicle pulled away. Illinois license plate on the front of the vehicle was "2548763" which returned on a 2008 Chevrolet Avalanche. Investigators have previously identified this vehicle being utilized by JOHNSON.

### c. Use of Capitol Storage Unit #190

28.     Investigators learned that Unit #190, located within the Capitol Storage facility located at 2225 J. David Jones Parkway in Springfield, Illinois, ("Unit #190") is, and at all times relevant to this application, rented to KATHRYN KELSHEIMER with a listed address of 3735 N. Moundford Avenue in Decatur, Illinois.

29.     On November 13, 2018, at approximately 6:12 p.m., a black Dodge Charger pulled up to and parked just around the corner to Unit #190. JOHNSON, wearing a grey-colored hooded jacket or sweatshirt, exited the driver's seat and walked over to Unit #190. JOHNSON unlocked and opened the door to Unit #190 as a truck pulling a large enclosed trailer pulled up and stopped near the door to Unit #190. JOHNSON stepped inside of Unit #190 as the driver of the truck, identified as LINDELL WILLEY, walked to the rear of the trailer and lowered the trailer door. WILLEY stepped into the trailer and

20

carried out a large brown box and placed the box on the trailer door which was serving as a ramp for the trailer. WILLEY stepped back into the trailer and carried out another large brown box and set the box down next to the first box he carried out. JOHNSON exited Unit #190 carrying a large brown box and carried the box into the trailer. JOHNSON stepped out of the trailer empty handed. JOHNSON then picked up one of the boxes that WILLEY removed from the back of the trailer and carried that box into Unit #190. Then, JOHNSON exited Unit #190 empty-handed and walked to the rear of the trailer where WILLEY was standing. JOHNSON picked up the second brown box and appeared to have a conversation with WILLEY. JOHNSON then carried the second box into Unit #190. WILLEY closed the door to the trailer as JOHNSON stepped out of Unit #190 and closed and locked Unit #190. WILLEY returned to the driver's seat of the truck as JOHNSON returned to the driver's seat of the Dodge. Both vehicles pulled away together.

30.     Below is a summary of pole camera activity outside of Unit #190 on various dates:

   a.  11/16/2018

              i. 4:11 p.m. - Black Dodge Charger displaying Illinois registration AC8-3416 pulled up and stopped outside of 190. JOHNSON exited the driver's seat wearing a brown coat and brown pants. JOHNSON unlocked and opened Unit #190 and stepped inside.
             ii. 4:12 p.m. - JOHNSON exited Unit #190 carrying a large, open brown box and placed the box into the rear passenger area of the Dodge.

    iii.   4:13 p.m. - JOHNSON returned to Unit #190, closed and locked the door. JOHNSON got back into the driver's seat of the Dodge and the vehicle pulled away.

b. 11/26/2018

    ii.   8:02 p.m. - Black Dodge Charger displaying Illinois registration AC8-3416 pulled up and parked outside of Unit #190. JOHNSON, wearing a multi-colored hooded jacket, black pants, and brown boots, exited the driver's seat of the Dodge. JOHNSON unlocked and opened the door to Unit #190 and stepped inside.

    iii.   8:03 p.m. - JOHNSON exited Unit #190 carrying a large brown box. JOHNSON placed the box into the rear passenger area of the Dodge.

    iv.   8:04 p.m. - JOHNSON walked back to Unit #190 and stepped inside and then stepped back out with another large brown box. JOHNSON placed that box into the rear passenger area of the Dodge. JOHNSON returned to Unit #190 and stepped inside then immediately stepped out and walked to the passenger side of the Dodge. JOHNSON closed the rear passenger side door and opened the front passenger side door and leaned into the vehicle. JOHNSON stepped back from the Dodge holding a cell phone in his right hand and walked back inside Unit #190.

    v.   8:06 p.m. - JOHNSON exited Unit #190 carrying a large black trash bag. JOHNSON opened the front passenger side door and placed the bag into the Dodge. JOHNSON closed the front passenger side door and stepped back into Unit #190, closed and locked the door, then returned to the driver's seat of the Dodge. The Dodge then pulled away.

c. 11/27/2018

    i.   11:58 a.m. - Black Dodge Charger displaying Illinois registration AC8-3416 pulled up and parked outside of Unit #190. JOHNSON, wearing a multi-colored hooded jacket, gray sweat pants, and brown boots, exited the driver's seat of the Dodge. JOHNSON opened the rear driver's side door of the Dodge and removed a bag with handles. JOHNSON carried the bag to the door of Unit #190 and placed the bag down and he unlocked and opened the door to Unit #190.

    ii.   11:59 a.m. - JOHNSON picked up the bag and stepped inside Unit #190. JOHNSON exited Unit #190 empty handed, closed and locked the door to Unit #190, and returned to the driver's seat of the Dodge. The Dodge then pulled away.

d. 12/14/2018

    i.   2:59 p.m. - Dark-colored Chrysler minivan, displaying Illinois registration BD-45039, pulled up and stopped near Unit #190.

    ii.   3:00 p.m. - JOHNSON, wearing a dark-colored hooded jacket, light-colored pants, and brown boots, exited the driver's seat of the minivan. JOHNSON walked in front of the minivan and to the door to Unit #190. JOHNSON unlocked and opened the door to Unit #190 and stepped inside.

    iii.   3:02 p.m. - JOHNSON exited Unit #190 carrying a large brown box and walked to the rear of the minivan. JOHNSON held the box while raising the rear door to the van. JOHNSON then placed the box into the van then lowered the rear door to the minivan.

    iv.   3:03 p.m. - JOHNSON walks back to Unit #190 and closed and locked the door to Unit #190. Johnson returned to the driver's seat of the minivan. The minivan pulled away.

    v.   *Illinois registration BD-45039 returns on a 2013 Chrysler registered to COURTNEY JOHNSON with an address of 3808 Eagle Claw Drive Springfield, Illinois.

e. 12/22/2018

    i.   2:34 a.m. - Dark-colored Chrysler minivan, displaying Illinois plate BD-45039, pulled up and stopped outside of Unit #190. JOHNSON, wearing a black jacket, black pants, and black & white shoes, exited the driver's seat. JOHNSON unlocked and opened the door to Unit #190 and stepped inside.

    ii.   2:35 a.m. - JOHNSON stepped out of Unit #190 and walked to the passenger side door of the minivan and opened the door. JOHNSON then walked to the rear of the minivan and raised the rear door. JOHNSON then returned to Unit #190 and stepped inside.

    iii.   2:36 a.m. - JOHNSON exited Unit #190 carrying a large brown box. JOHNSON placed the box into the rear of the minivan

23

and returned to Unit #190 and stepped inside. JOHNSON
exited Unit #190 carrying another large brown box and placed
that box into the rear area of the minivan. JOHNSON then
lowered the rear door to the minivan. JOHNSON walked over
to the passenger side of the minivan and closee the passenger
side door. JOHNSON closed and locked the door to Unit
#190.

iv.   2:37 a.m. - JOHNSON returned to the driver's seat of the
minivan. The minivan pulled away.

v.   *Illinois registration BD-45039 returns on a 2013 Chrysler
registered to COURTNEY JOHNSON with an address of 3808
Eagle Claw Drive Springfield, Illinois.

31.   JOHNSON and his girlfriend, Ivana Booker, spent the night at JOHNSON's

mother's residence at 3808 Eagle Claw Drive, Springfield, Illinois, on April 11, 2019. On

April 12, 2019, JOHNSON's 2013 Chrysler minivan left the residence at approximately

7:24 a.m. and drove to the Calvary Academy at 1730 W. Jefferson Street, Springfield,

Illinois. The Calvary Academy is where agents believe JOHNSON's son attends school.

At approximately 7:40 a.m., JOHNSON arrived at Unit #190. There, JOHNSON unlocked

Unit #190, entered Unit #190, and then exited Unit #190 carrying a Neiman Marcus

shopping bag. JOHNSON placed the shopping bag in the rear hatch area of the minivan

and then covered the bag with loose clothing. JOHNSON then closed and locked Unit

#190 and exited. JOHNSON then drove directly to 3808 Eagle Claw Drive and removed

an item from the rear hatch area of the minivan.

### d. Use of Storage Masters West Main Unit G7

32.   On May 1, 2019, following the delivery of approximately 170 pounds of

cannabis to JOHNSON, investigators identified another storage facility that JOHNSON

utilizes to store illegal narcotics prior to redistribution, specifically unit G7 within the

24

Storage Masters West Main facility located at 4710 West Main Street Decatur, Illinois. Precise phone location data supported by electronic surveillance methods confirmed JOHNSON at Unit G7 on May 15, 2019, May 23, 2019, and June 2, 2019. JOHNSON's activities during these visits is consistent with JOHNSON removing illegal narcotics from the unit for redistribution purposes.

33.     On June 25, 2019, at approximately 7:22, the Brown 2008 Chevrolet Avalanche bearing Illinois license plate 2548763B arrived and parked in front of Unit G7. JOHNSON exited the Avalanche from the driver's door and unlocked Unit G7. JOHNSON went into the storage unit for approximately two minutes and re-emerged carrying a dark-colored, medium-sized suitcase. JOHNSON placed that suitcase inside the Avalanche and went back into Unit G7. When JOHNSON re-emerged, he carried a white garbage bag, which he placed inside the Avalanche. Thereafter, JOHNSON locked Unit G7 and departed.

### GABRIELLE JOHNSON's April 2019 Payment for the Marijuana Shipment

34.     On May 10, 2019, JOHNSON received a text message from a supplier of marijuana with the following message:

> New Total
> 51aaa@1750
> 12aaa@17
> 2aa@1650
> 20a+@1450
> 33dog@1350
> 2og@1150
> 16animalcook@1250
> 12sherb@1250

25

35.    Based on their training and experience investigating drug traffickers, agents believe that the message above is a price listing for an order of varying strains of cannabis. The number to the left represents a quantity in pounds, the characters in the middle identify the strain of cannabis, and the "@" symbol followed by a number identifies the per-pound price of that quantity of cannabis. For example, this order include 16 lbs. of "animal cook" cannabis for $1,250 per pound. JOHNSON's marijuana order outlined above is for more than 100 lbs.

36.    On April 13, 2019, JOHNSON confirmed with the supplier that he arranged to pay "226", meaning that JOHNSON ordered $226,000 worth of marijuana. During a phone call with the supplier on April 13, 2019, JOHNSON asked the individual coordinating payment what is a good time for him tomorrow (meaning April 14, 2019), to which the unknown male replied any time after 1:00 p.m. Later on April 13, 2019, the individual coordinating payment provided JOHNSON with an address for a grocery store in Chicago, Illinois.

37.    A snowstorm came through northern Illinois and Wisconsin on April 14, 2019. In a series of four text messages sent from the individual coordinating payment to JOHNSON's cellular phone number at approximately 2:49 p.m., the individual coordinating payment conveyed the following: "[1/4] I was on a flight to Chicago this morning that got redirected to Tulsa Oklahoma due to weather conditions. The pilot said best case scenario we will be la[2/4]nding around 5pm. We've been sitting on the tarmac for 30 min and are hoping to take off soon...My home girl Debrah(same girl as last time)

26

can meet y[3/4]our buddy at 5 pm for me. She can handle this no problem. Or you friend can wait for me which prob won't be till at least 6pm. Let me know what you wan[4/4]t to do? If your cool with her handling it, I'd like to give Debrah your number so she can coordinate better because I'll be in the air." Thereafter, JOHNSON received a call from an unknown female. JOHNSON told the female that they will call her when "they like 45 minutes away."

38.    During the afternoon on April 14, 2019, FBI in Chicago conducted surveillance on the Mariano's parking garage. At approximately 5:00 p.m., GABRIELLE JOHNSON, drove her black Dodge Challenger to Mariano's in Chicago, Illinois. Once parked, another female entered GABRIELLE JOHNSON's Dodge Challenger. After approximately two minutes, the trunk to the Dodge Challenger opened and the female exited, removed a suitcase out of the trunk of GABRIELLE JOHNSON's Challenger, placed it in the trunk of the female's vehicle, and drove away.

39.    Immediately after that encounter, GABRIELLE JOHNSON left Chicago and drove back to the Central District of Illinois.

40.    On April 15, 2019, at approximately 10:57 a.m., JOHNSON sent a text message to supplier that stated, "Yo so I just leave the crib that's only 200 she forgot the lil one but I can mail or or I'll be out next week on Tuesday." Based on these exchanges and the surveillance operation, agents believe that JOHNSON agreed to pay approximately $226,000 for the quantities of various types of marijuana as set forth in the April 10, 2019, price list. Approximately $200,000 of that payment was made by

GABRIELLE JOHNSON on April 14, 2019, in Chicago. JOHNSON had to make arrangements for the remaining $26,000.

### May 1, 2019, Marijuana Shipment to the JOHNSON DTO

41.     On May 1, 2019, at approximately 6:04 p.m., JOHNSON placed an outgoing call to JACKIE CAMPBELL. During that call, the two arranged to meet. Shortly thereafter, law enforcement surveillance teams observed JOHNSON at CAMPBELL's residence located at 2595 Peru Road in Decatur, Illinois, receiving the shipment of marijuana. At approximately 6:02 p.m. on May 1, 2019, JOHNSON called his California source of supply at (312) 833-8281. During that call, the California source informed JOHNSON that the driver was named "Carrots" and that he was scheduled to arrive between 7:08 p.m. and 7:15 p.m. After that phone call ended, JOHNSON texted the same number this message, "2500 Peru Rd 62522." (Down the street from CAMPBELL's residence). The prearranged meeting location was 2500 Peru Road in Decatur, Illinois, 62522, which was near where agents had set-up surveillance. Agents observed JOHNSON making contact with a semi-tractor trailer at approximately 7:13 p.m., which is the same time JOHNSON received a call from the California source in which JOHNSON asked, "is that the right one?" and the source replied, "yeah, yeah, that's the right dude." JOHNSON's Chrysler van is behind CAMPBELL's residence.

42.     Around 7:19 p.m., JOHNSON unloaded several large boxes from the back of the semi-tractor trailer. CAMPBELL helped JOHNSON unload the boxes and placed

several in JOHNSON's Chrysler van as well as CAMPBELL's tan GMC sport-utility vehicle.

43.     JOHNSON and CAMPBELL got into CAMPBELL's GMC and drove away. An unknown male got into JOHNSON's van and drove away as well at 7:25 p.m. Surveillance and the tracker on the van confirmed that JOHNSON's Chrysler van drove to the Storage Masters storage facility located at 4710 W. Main Street in Decatur, Illinois. By 7:37 p.m., surveillance followed both vehicles as they drove to 506 N. Carolina Avenue, in Decatur, Illinois, which was an address associated with EALEY. At 9:51 p.m., JOHNSON received an intercepted call from the California source. During which, JOHNSON confirmed with the source that he received ten boxes and that "box 22" has a list of what's in every box.

44.     Later on May 1, 2019, Illinois State Police Trooper Heard stopped the semi near Benton, Illinois to conduct a routine commercial motor vehicle inspection. During a probable cause search, the semi was found to contain 12 large boxes similar to the boxes unloaded by JOHNSON and CAMPBELL. Contained within those boxes were 200 individually vacuum-sealed bags of suspected cannabis, which was seized by the Illinois State Police.

## Use of Cellular Phones and Digital Devices to Facilitate Drug Trafficking

45.     Based on my experience investigating the JOHNSON DTO, I know that JOHNSON and other members of the JOHNSON DTO have used multiple cellular

phones and continue to use multiple cellular phones, even simultaneously, in order to promote and facilitate illegal drug trafficking activities.

46.     Over the course of this investigation, JOHNSON has utilized the following cellular telephone numbers, a) 217-836-9012 (October 3, 2018 – present);  b) 618-570-0087 (March 8, 2019 – May 2019); c) 618-593-1659 (December 6, 2018 – February 26, 2019);  d) 217-622-8027 (July 9, 2017 – November 23, 2018);   e) 217-464-0953 (April 3, 2017 – December 20, 2017);  and f) 770-312-6373 (September 7, 2016 – June 2, 2017).

47.     On May 1, 2019, at approximately 6:04 p.m., JOHNSON used a cellular phone to place an outgoing call to JACKIE CAMPBELL to arrange a meeting. Surveillance teams observed JOHNSON utilizing JACKIE CAMPBELL's house at approximately the same time in order to receive the shipment of marijuana, as described above. Then, at approximately 6:02 p.m. on May 1, 2019, JOHNSON used a cellular phone to call his California source at (312) 833-8281. During that call, the California source informed JOHNSON that the driver was named "Carrots" and that he was scheduled to arrive between 7:08 p.m. and 7:15 p.m. After that phone call ended, JOHNSON used a cellular phone to text the same number this message, "2500 Peru Rd 62522." The prearranged meeting location was 2500 Peru Road in Decatur, Illinois, 62522, which was near where agents had set-up surveillance. Agents observed JOHNSON making contact with a semi-tractor trailer at approximately 7:13 p.m., which is the same time JOHNSON received a call on JOHNSON's cellular phone from the California source in which JOHNSON asked, "is that the right one?" and the source replied, "yeah, yeah, that's the right dude."

30

## Vehicles

48.    JOHNSON and other members of the JOHNSON DTO utilize several vehicles to facilitate and promote its drug trafficking conspiracy by further transporting marijuana for re-distribution, transporting money for the purchase of marijuana, and traveling to meeting locations in order to arrange for the transfer of marijuana and currency for the purpose of furthering the JOHNSON DTO's drug trafficking activity.

49.    The vehicles used to promote the JOHNSON DTO's drug trafficking conspiracy and their respective roles are outlined below.

### a.  White 2015 Cadillac Escalade, Illinois license plate Q732877

50.    On March 10, 2019, agents observed JOHNSON enter the white 2015 Cadillac Escalade, displaying Illinois license plate Q732877 and drive away from the garage of his new residence located at 25 N. Central Avenue, Clayton, Missouri.

51.    On March 18, 2019, the white 2015 Cadillac Escalade, displaying Illinois license plate Q732877, left JENNIFER FISHER's residence located at 3808 Eagle Claw in Springfield, Illinois, driven by JOHNSON's girlfriend, Ivana Booker. Booker drove the white 2015 Cadillac Escalade, displaying Illinois license plate Q732877 to the Clayton, Missouri residence she shares with JOHNSON. On the same day and after Booker left, JOHNSON left JENNIFER FISHER's residence, having been there while the white 2015 Cadillac Escalade, displaying Illinois license plate Q732877 was also there.

52.    Days following the May 1, 2019, marijuana delivery, intercepted communications between JOHNSON and the unknown male revealed that JOHNSON

31

was set to pay the remaining $25,000 owed on May 9, 2019, at the same location in Chicago that GABRIELLE JOHNSON met up with the unknown female on April 14, 2019. A physical surveillance operation was conducted at that location and surveillance watched as JOHNSON met with the same unknown female that GABRIELLE JOHNSON met with on April 14, 2019. Electronic surveillance on JOHNSON's white, 2015 Cadillac Escalade, displaying Illinois plate Q732877, along with precise phone location data from JOHNSON's cellular phone, showed JOHNSON in Chicago, Illinois, on May 9, 2019. On May 9, 2019, agents conducted surveillance of the prearranged meeting location in Chicago, Illinois. Agents observed the same unknown female involved in the April 14, 2019, money exchange arrive at the meeting location. Agents observed JOHNSON arrive in the white Cadillac Escalade. The unknown female entered the passenger area of white Cadillac Escalade while JOHNSON was still in the driver's seat. Within minutes, the female exited JOHNSON's vehicle and JOHNSON and the unknown female both left the meeting location. Based on my training and familiarity with the JOHNSON DTO, I believe that JOHNSON used the white Cadillac Escalade on May 9, 2019, to deliver the outstanding balance of money owed to the marijuana supplier.

### b. Brown 2008 Chevrolet Avalanche, Illinois license plate 2548763B

53.     On February 10, 2019, at approximately 10:48 p.m., JOHNSON arrived in the brown 2008 Chevrolet Avalanche at Northwest Mini-Storage Unit F19. JOHNSON carried a large object from the rear of the 2008 Chevrolet Avalanche into Unit F19. JOHNSON exits Unit F19 empty handed and walks to the rear of the vehicle. JOHNSON

completed two more trips similar to the first trip. A taller male with JOHNSON carried a fourth large item, what looked like a large trash bag, and placed the bag inside of Unit F19. Both JOHNSON and the taller male returned to the rear of the 2008 Chevrolet Avalanche empty handed. JOHNSON completed two more trips carrying large items similar to a trash bag from the rear of the 2008 Chevrolet Avalanche into Unit F19. The taller male completed one more trip. Total items carried into Unit F19 from the rear of the 2008 Chevrolet Avalanche was seven.

54.     On February 16, 2019, JOHNSON drove the 2008 Chevrolet Avalanche to Unit F19. This time, JOHNSON removed two large boxes from Unit F19 and placed them into the 2008 Chevrolet Avalanche before driving away. After leaving Unit F19, JOHNSON traveled to Unit A42, which is registered to DEANDRI BURTON. Once at Unit A42, JOHNSON removed the two boxes from the 2008 Chevrolet Avalanche and left them inside Unit A42 before JOHNSON drove away.

55.     On March 6, 2019, at approximately 12:45 a.m., JOHNSON drove the 2008 Chevrolet Avalanche to Unit F19. JOHNSON removed a large trash bag, another large item, and a large brown box from Unit F19 and placed them inside the 2008 Chevrolet Avalanche. JOHNSON then drove away from Unit F19 but arrived at Unit A42 minutes later. JOHNSON and an unknown individual take items out of the 2008 Chevrolet Avalanche, including the large brown box, and left them inside Unit A42.

56.     Based on my training and experience as well as the investigation into the operation of the JOHNSON DTO, JOHNSON's late-night conduct and transfer of items

to and from the storage units described above is consistent with JOHNSON's re-distribution of drugs to downstream sellers.

### c. Dark Blue 2013 Chrysler Town and Country Van, Illinois license plate BD45039

57.     The dark blue 2013 Chrysler Town and Country van bearing Illinois license plate BD45039  is registered to COURTNEY JOHNSON with an address of 3808 Eagle Claw Drive Springfield, Illinois, which is JENNIFER FISHER's address.

58.     On December 14, 2018, JOHNSON drove the dark blue 2013 Chrysler Town and Country van to Northwest Mini-Storage Unit #190. There, carried a large brown box out of Unit #190 and drove away.

59.     On December 22, 2018, at approximately 1:19 a.m., JOHNSON drove the dark blue 2013 Chrysler Town and Country van to Northwest Mini-Storage Unit F19. There, JOHNSON removed a total of eight large brown boxes out of Unit F19 and placed them into the dark blue 2013 Chrysler Town and Country van and drove away. Later, at approximately 2:34 a.m. on December 22, 2018, JOHNSON drove the dark blue 2013 Chrysler Town and Country van to Northwest Mini-Storage Unit #190. There, JOHNSON removed two large brown boxes from Unit #190 and then drove away.

60.     During the May 1, 2019, marijuana delivery, the dark blue 2013 Chrysler Town and Country van was at CAMPBELL's residence and used to transport boxes from the semi-tractor trailer to EALEY's residence as described above.

**d.  Black 2010 Dodge Challenger, Illinois license plate S162093**

61.    The black 2010 Dodge Challenger bearing Illinois license plate S162093 is registered to GABRIELLE JOHNSON and her grandmother, KATHRYN KELSHEIMER.

62.    On April 14, 2019, GABRIELLE JOHNSON drove the black 2010 Dodge Challenger bearing Illinois license plate S162093 to Chicago to meet with an unknown female in order to provide $200,000 as payment for the May 1, 2019, marijuana delivery.

**e.  Dark Gray 2014 Chrysler 300, Illinois license plate V926743**

63.    The dark gray 2014 Chrysler 300 bearing Illinois license place V926743 is registered to JENNIFER FISHER at 3808 Eagle Claw Drive in Springfield, Illinois.

64.    On November 4, 2018, JOHNSON drove the dark gray 2014 Chrysler 300 bearing Illinois license place V926743 to Unit F19 and removed a large brown box from Unit F19 before he drove away.

65.    JENNIFER FISHER has, on multiple occasions in June 2019, driven the gray Chrysler 300, which has been parked, also on multiple occasions in June 2019, at JENNIFER FISHER's residence located at 3808 Eagle Claw Drive in Springfield, Illinois

**f.  Silver 2008 Buick Enclave, Illinois license plate 265476**

66.    Investigators have identified a silver-colored 2008 Buick Enclave SUV that is frequently operated by MARQUEVIN SMITH. The Buick currently displays Illinois license plate "265476." The vehicle is registered to GUITTIERREZ S. COLE.

67.    On October 3, 2018, between approximately 7:14 p.m. and 7:19 p.m., JOHNSON drove an SUV with a partial Illinois license plate visible (characters 2, 3, & 4

35

– "654") up to Unit F19 and went inside. When JOHNSON re-emerged, he carried a large brown box, which he placed inside the SUV. JOHNSON retrieved a second box and then a third box and placed them inside the SUV. After he locked the unit, JOHNSON drove away.

68.    On October 3, 2018, between approximately 7:22 p.m. and 7:25 p.m., JOHNSON returned to Unit F19 driving the same SUV. Once parked in front of the unit, JOHNSON opened the hatch of the SUV. When JOHNSON opened the hatch to the SUV, all three boxes JOHNSON placed inside previously were missing. JOHNSON then loaded into the SUV three more large brown boxes and two large black trash bags retrieved from within Unit F19. JOHNSON closed and locked Unit F19 and drove away again.

## JENNIFER FISHER's Facilitation of JOHNSON's Travel

69.    Investigation has shown that JOHNSON travels frequently by air despite having no known legitimate source of income. Over the past 18 month, JOHNSON made the following trips:

| DATE | ORIGINATION | DESTINATION |
|---|---|---|
| 1/23/18 | St. Louis | Los Angeles |
| 1/25/18 | Los Angeles | San Francisco to St. Louis |
| 2/11/18 | St. Louis | Los Angeles |
| 2/13/18 | Los Angeles | St. Louis |
| 2/16/18 | St. Louis | Los Angeles |
| 2/21/18 | Los Angeles | St. Louis |
| 3/3/18 | St. Louis | Los Angeles |
| 3/5/18 | Los Angeles | San Francisco |
| 3/6/18 | San Francisco | St. Louis |
| 3/18/18 | Chicago | Miami |

| DATE | ORIGINATION | DESTINATION |
|---|---|---|
| 3/20/18 | Miami | Chicago |
| 4/23/18 | St. Louis | Salt Lake City to San Francisco |
| 4/24/18 | San Francisco | St. Louis |
| 4/26/18 | St. Louis | Atlanta |
| 4/28/18 | Atlanta | St. Louis |
| 5/3/18 | St. Louis | Sacramento |
| 5/4/18 | Sacramento | St. Louis |
| 5/2318 | St. Louis | Kansas City |
| 5/25/18 | Kansas City | Salt Lake City to San Jose |
| 5/28/18 | Sacramento | Houston |
| 5/29/18 | Houston | St. Louis |
| 6/1/18 | St. Louis | Atlanta |
| 6/3/18 | Atlanta | St. Louis |
| 6/11/18 | St. Louis | Houston |
| 6/12/18 | Houston | Salt Lake City to Fresno, CA |
| 6/13/18 | Fresno, CA | Dallas to St. Louis |
| 6/24/18 | St. Louis | Los Angeles |
| 6/26/18 | Los Angeles | St. Louis |
| 6/30/18 | St. Louis | Los Angeles |
| 7/1/218 | Phoenix | St. Louis |
| 7/23/18 | St. Louis | Salt Lake City to Sacramento |
| 7/24/18 | San Francisco | Salt Lake City to St. Louis |
| 7/27/18 | Peoria, IL | Las Vegas |
| 7/30/18 | Las Vegas | Peoria, IL |
| 8/27/18 | St. Louis | Atlanta then return to St. Louis |
| 9/1/18 | St. Louis | New York |
| 9/3/18 | New York | St. Louis |
| 9/21/18 | St. Louis | Houston |
| 9/21/18 | Houston | St. Louis |
| 9/28/18 | St. Louis | Miami |
| 10/1/18 | Miami | St. Louis |
| 10/6/18 | St. Louis | Miami |
| 10/10/18 | Miami | Atlanta |
| 10/12/18 | Atlanta | St. Louis |
| 10/22/18 | St. Louis | San Francisco |
| 10/23/18 | Sacramento | Los Angeles |
| 10/27/18 | Los Angeles | Sacramento |

| DATE | ORIGINATION | DESTINATION |
|---|---|---|
| 10/28/18 | Sacramento | St. Louis |
| 11/18/18 | St. Louis | Atlanta |
| 11/20/18 | Atlanta | St. Louis |
| 11/27/18 | Chicago | Dubai, UAE |
| 12/3/18 | Dubai, UAE | Chicago |
| 1/16/19 | St. Louis | San Francisco |
| 1/17/19 | (Unknown) | St. Louis |
| 1/27/19 | St. Louis | Sacramento |
| 1/27/2019 | Sacramento | Los Angeles |
| 1/28/19 | Los Angeles | (Unknown) |
| 2/11/19 | St. Louis | Los Angeles |
| 2/15/19 | Los Angeles | St. Louis |
| 2/18/19 | Atlanta | St. Louis |
| 2/25/19 | St. Louis | Los Angeles |
| 2/28/19 | Los Angeles | St. Louis (3/1/19) |
| 4/1/19 | St. Louis | Los Angeles |
| 4/4/19 | Los Angeles | St. Louis |
| 4/16/19 | St. Louis | Miami |
| 4/19/19 | Miami | Atlanta |
| 4/20/19 | Atlanta | St. Louis |
| 4/23/19 | St. Louis | Los Angeles |
| 4/26/19 | Los Angeles | St. Louis |
| 5/10/19 | St. Louis | Miami |
| 5/13/19 | Miami | St. Louis |
| 5/17/19 | St. Louis | Los Angeles |
| 5/20/19 | Los Angeles | St. Louis |
| 5/24/19 | St. Louis | Miami |
| 5/28/19 | Miami | St. Louis |

70.     JOHNSON's May 3, 2018, flight to Sacramento was booked on May 2, 2018, using JENNIFER FISHER's Sam's Club World Mastercard account ending in 8658 and processed by Synchrony Bank. The billing statement in October 2018 and as recently as May 6, 2019, was addressed to "JENNIFER FISHER" at "3808 EAGLE CLAW DR" in Springfield, Illinois.

71.    At the same time JOHNSON's May 3, 2018, flight to Sacramento was booked, another booking to Sacramento, via Salt Lake City, for the same day was made for JAMES ALLEN using the same Sam's Club World Mastercard account ending in 8658. On May 2, 2018, a $3,000 cash payment was made toward that Sam's Club World Mastercard account ending in 8658 in the Sam's Club store located in Springfield, Illinois.

72.    JAMES ALLEN is a Kansas City associate of JOHNSON. On December 21, 2018, Kansas City FBI stopped a mule carrying $665,170 in United States Currency in his truck. The mule was interviewed and provided the following information:

      a.   The individual had been "a mule" for "J" and "Erve" since February 2018. "J" referred to JAMES ALLEN and "Erve" referred to JOHNSON.

      b.   The mule stated he made over 10 trips to California and/or Oregon for "ERVE" and "J". The mule collected money from "ERVE" in Illinois, at a house, storage unit or parking lot, then he travel to Kansas City, Missouri to collect money from "J".

      c.   The mule stated "J" and "ERVE" both pay him $1,000 each trip to cover the cost of fuel for the trip and, when he delivers the product, he is paid $5,000 each from "J" and "ERVE".

73.    On May 7, 2019, at approximately 5:10 p.m., JOHNSON spoke to JENNIFER FISHER, and instructed her to send JOHNSON "one of your cards," meaning a credit card in order to use to further facilitate the JOHNSON DTO's drug trafficking activities.

### Residences Associated with Johnson DTO Members

74.     In order to further the JOHNSON DTO's drug trafficking activities, JOHNSON travels frequently between his apartment located at 25 N. Central Avenue #309 in St. Louis (Clayton), Missouri, to JOHNSON's mother's residence located at 3808 Eagle Claw Drive in Springfield, Illinois, and to storage units and JOHNSON DTO member residences in Decatur, Illinois. The specific roles of the various locations utilized by the JOHNSON DTO are outlined by location below.

### a. 25 N. Central Avenue #309, St. Louis, Missoui.

75.     The premises located at 25 N. Central Avenue #309 in St. Louis, Missouri, is JOHNSON's primary residence. On March 10, 2019, agents observed JOHNSON enter his 2015 Cadillac Escalade, displaying Illinois license plate Q732877 and drive away from the garage of his residence located at 25 N. Central Avenue, Clayton, Missouri. Rental records indicate that JOHNSON used a fictitious name to rent Apartment #309, but the phone number associated with the renter of Apartment #309 is a phone number JOHNSON used.

### b. 10 Whippoorwill Drive; Decatur, Illinois.

76.     TIMOTHY EALEY's primary address is a residence at the premises located at 10 Whippoorwill Drive in Decatur, Illinois. As of July 1, 2019, Ameren utilities for 10 Whippoorwill Drive in Decatur, Illinois, identify the customers as EALEY and Chastina Ealey, EALEY's wife. Additionally, City of Decatur water billing lists as of July 1, 2019, the customer for 10 Whippoorwill Drive in Decatur, Illinois, as Chastina Ealey.

40

77.    On October 16, 2018, a surveillance operation was conducted in Springfield and Decatur, Illinois relating to the activity of the black Chevrolet dually pickup truck displaying Missouri license plate 48A9MB driven by WILLEY. At approximately 5:53 p.m., the Chevy drove east on Highway 36/72 near Jacksonville, Illinois. The truck was pulling the large trailer displaying Missouri license plate 18F1EB. Surveillance also confirms that WILLEY was the front seat passenger. The truck exited Highway 36.72 at Veterans Parkway in Springfield, Illinois. At approximately 6:27 p.m., a black Dodge Charger, displaying Illinois license plate AC8-3416, backed out of the driveway at 3808 Eagle Claw Drive Springfield, Illinois. At approximately 6:33 p.m., JOHNSON drove the Dodge to the Capitol Storage facility located at 2225 J. David Jones Parkway in Springfield, Illinois. The truck also arrived at the storage facility and followed the Dodge into the facility. Approximately six minutes later, both vehicles exited the facility. The truck is followed east on Highway 36/72.  At approximately 7:29 p.m., the Dodge is seen waiting outside the Northwest Mini-Storage facility main gate in Decatur, Illinois. At approximately 7:33 p.m., the truck exited I-72 at Route 121 and headed south toward Decatur. The truck turned into the Northwest Mini-Storage facility. At approximately 7:34 p.m., the truck pulled up to and stopped at Unit F19. At approximately 7:41 p.m., JOHNSON was inside of Unit F19 using a light. JOHNSON exited Unit F19 carrying a dark colored bag. JOHNSON closed and locked the door to Unit F19 then walks out of sight. The Dodge then drove from Unit F19 to 10 Whippoorwill Drive in Decatur, Illinois, where it parked.

41

### c.  506 N. Carolina Avenue; Decatur, Illinois.

78.     EALEY also maintains a residence at the premises located at 506 N. Carolina Avenue in Decatur, Illinois. On a daily or near daily frequency between approximately June 11, 2019, and June 25, 2019, EALEY's wife, Chastina Ealey was observed leaving from and returning to 506 N. Carolina Avenue in Decatur, Illinois. During that time, Chastina Ealey typically drove the white 2010 Lincoln sport utility vehicle bearing Illinois license plate BB11238 and registered to EALEY and parked that same sport utility vehicle at or near 506 N. Carolina Avenue in Decatur, Illinois. As of June 26, 2019, EALEY and Chastina Ealey are the current Ameren (power utility) customers registered at 506 N. Carolina Avenue in Decatur, Illinois, and have been since December 13, 2018.

79.     On May 1, 2019, after the marijuana shipment arrived and was unloaded, JOHNSON, CAMPBELL, and EALEY drove to 506 N. Carolina Avenue, in Decatur, Illinois between approximately 7:37 p.m. and 8:05 p.m. At approximately 9:00 p.m., a light-colored Buick arrived at 506 N. Carolina Avenue. At approximately 9:40 p.m., that Buick departed after an unknown individual placed two large bags in the trunk. Agents followed the Buick, which drove directly to Storage Masters located at 4710 W. Main Street in Decatur, Illinois. At 9:51 p.m., JOHNSON received an intercepted call from the California source. During which, JOHNSON confirmed with the source that he received ten boxes and that "box 22" has a list of what's in every box. At approximately 9:53 p.m., JOHNSON's blue Chrysler van departed from 506 N. Carolina Avenue.

### d.  724 W. Division Street; Decatur, Illinois.

80.      MARQUEVIN Q. SMITH's primary residence is the premises located at 724 W. Division Street in Decatur, Illinois. As of July 1, 2019, MARQUEVIN Q. SMITH's most recent Illinois driver's license information identified SMITH's address as 724 W. Division Street, Decatur, Illinois.

81.      On January 31, 2018, at approximately 2:03 p.m., surveillance showed that JOHNSON arrived at SMITH's house at 724 W. Division Street, Decatur, Illinois, in a silver-colored, 2017 Toyota Corolla with Florida license plate 918 KUX, which was a rental car. At approximately 9:47 p.m., surveillance showed a white, 2016 Chevy Impala with Illinois license plate AM74121 arrived and stopped on the street in front of 724 W. Division Street. No one exited the vehicle. Less than one minute later, surveillance identified JOHNSON as he walked up to the vehicle, opened the rear driver's side door and leaned into the vehicle. JOHNSON then pulled away from the vehicle, closed the vehicle door, and walked back toward the front of 724 W. Division Street. Approximately one minute later, surveillance watched as JOHNSON returned to the vehicle carrying a large bag then enters the back seat of the vehicle by way of the rear driver's side door. Approximately three minutes later, JOHNSON exited the vehicle without the bag and walked toward 724 W. Division Street. The 2016 Chevy Impala then pulled away. At approximately 11:10 p.m., a traffic stop was conducted on the white, 2016 Chevy Impala with Illinois license plate AM74121 and more than 5,000 grams (12 pounds) of cannabis was located in the trunk of the vehicle in a vacuum-seal bag which was wrapped in two

43

additional bags. The outer bag was similar to the bag that JOHNSON was carrying when surveillance observed him just prior to entering this vehicle. The subject driving the car, WARNETHER BANKS, was arrested and charged with possession of a controlled substance stemming from this traffic stop. WARNETHER BANKS was offered an opportunity to cooperate with law enforcement but refused to do so.

### e. 1212 W. Lincoln Park Drive; Decatur, Illinois.

82.   DEANDRI BURTON's primary residence is the premises located at 1212 W. Lincoln Park Drive in Decatur, Illinois. Telephone records for phone number 217-413-3409 include the subscriber's address as 1212 W. Lincoln Park Drive in Decatur, Illinois. Utility services to 1212 W. Lincoln Park Drive in Decatur, Illinois, are registered to "Dee Burton." Agents also identified BURTON's voice on intercepted calls with JOHNSON between March 13, 2019, and May 8, 2019, while BURTON was using telephone number 217-413-3409.

83.   During the March 6, 2019, late-night visit to Unit A42, which is registered to BURTON, and described above, JOHNSON was accompanied by another male, whom officers were unable to clearly identify on the pole camera. However, that unidentified individual was the individual unlocked and opened Unit A42.

### f. 3808 Eagle Claw Drive; Springfield, Illinois.

84.   The premises located at 3808 Eagle Claw Drive in Springfield, Illinois, is the primary address of JOHNSON's mother, JENNIFER FISHER. JOHNSON frequently stays at his mother's house in Springfield, Illinois.

44

85. On September 24, 2018, GABRIELLE JOHNSON drove away from 3808 Eagle Claw Drive, Springfield, Illinois, in her black 2010 Dodge Challenger. Within an hour, GABRIELLE JOHNSON arrived at Unit F19 in Decatur, Illinois, and met JOHNSON at the storage unit. JOHNSON removed a large black bag from Unit F19 and placed it in the trunk of GABRIELLE JOHNSON's Dodge Challenger. An hour after that, the Dodge Challenger returned to 3808 Eagle Claw Drive, Springfield, Illinois. Within 20 minutes, JENNIFER FISHER exited 3808 Eagle Claw Drive to re-park the Dodge Challenger on the street in front of the residence. Ten minutes after that, JOHNSON arrived in his white Chrysler 300. JOHNSON opened the trunk of the black Dodge Challenger, removed the black bag, placed the black bag in the trunk of his white Chrysler 300, and drove away in his white Chrysler 300. Fifteen minutes later, JOHNSON returned to 3808 Eagle Claw Drive in his white Chrysler 300 and parked that Chrysler on the driveway. Minutes later, agents observed the black Dodge Challenger drive away, but agents could not determine who was driving.

### g. 2595 Peru Road; Decatur, Illinois.

86. JACKIE CAMPBELL's primary residence is the premises located at 2595 Peru Road in Decatur, Illinois. In preparation of the May 1, 2019, marijuana delivery, CAMPBELL agreed to assist the JOHNSON DTO by allowing the shipment to be delivered at his residence located at 2595 Peru Road in Decatur, Illinois. Further, when the shipment arrived, JOHNSON, CAMPBELL, and EALEY were waiting to unload the shipment at 2595 Peru Road in Decatur, Illinois.

45

87.    On May 1, 2019, at approximately 6:04 p.m., which is before the marijuana delivery arrived, JOHNSON called CAMPBELL and asked CAMPBELL where he was. In response, CAMPBELL told JOHNSON that CAMPBELL was at "the house" and "at the pond." CAMPBELL's residence at 2595 Peru Road in Decatur, Illinois, includes a small pond on the property. At 6:20 p.m., surveillance observed CAMPBELL drive the recreational vehicle in the driveway at 2595 Peru Road in Decatur, Illinois, over in such a way that provided additional space to back a semi-tractor trailer onto the driveway. While CAMPBELL is still in the recreational vehicle, JOHNSON arrived at 2595 Peru Road in Decatur, Illinois. JOHNSON and CAMPBELL appeared to speak to one another while CAMPBELL was still standing in the doorway of the recreational vehicle.

Respectfully submitted,
s/Mark Hill

Mark T. Hill
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on July 3, 2019
s/Eric Long

Eric I. Long
UNITED STATES MAGISTRATE JUDGE

46

AO 442 (Rev 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois

| | |
|---|---|
| United States of America | |
| v. | Case No. 19- mj - 7133 -01 |
| COURTNEY TYLER JOHNSON | |

A TRUE COPY
ATTEST
~~~ G YASUNAGA, CLERK OF COURT
BY _B maish_
DEPUTY CLERK
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
7/3/19

_Defendant_

## ARREST WARRANT

To:    Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

_(name of person to be arrested)_    COURTNEY TYLER JOHNSON

who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment    ☐ Superseding Indictment    ☐ Information    ☐ Superseding Information    ☑ Complaint

☐ Probation Violation Petition    ☐ Supervised Release Violation Petition    ☐ Violation Notice    ☐ Order of the Court

This offense is briefly described as follows:

Conspiracy to possession with the intent to distribute marijuana, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and (b)(1)(C).

s/Eric Long

Date:    07/03/2019

_Issuing officer's signature_

City and state:    Urbana, Illinois

HON. ERIC I. LONG, U.S. MAGISTRATE JUDGE
_Printed name and title_

| Return |
|---|
| This warrant was received on _(date)_ _____ , and the person was arrested on _(date)_ _____ at _(city and state)_ _____ |
| Date: _____ |
| _Arresting officer's signature_ |
| _Printed name and title_ |

AO 442  (Rev. 11/11)  Arrest Warrant (Page 2)

**This second page contains personal identifiers provided for law-enforcement use only and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender: _____

Known aliases: _____

Last known residence: _____

Prior addresses to which defendant/offender may still have ties: _____

Last known employment: _____

Last known telephone numbers: _____

Place of birth: _____

Date of birth: _____

Social Security number: _____

Height: _____     Weight: _____

Sex: _____     Race: _____

Hair: _____     Eyes: _____

Scars, tattoos, other distinguishing marks: _____

History of violence, weapons, drug use: _____

Known family, friends, and other associates *(name, relation, address, phone number)*: _____

FBI number: _____

Complete description of auto: _____

Investigative agency and address: _____

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*: _____

Date of last contact with pretrial services or probation officer *(if applicable)*: _____